EXHIBITS # 5



remedial elections as the circumstances suggest.

We make one final set of observations. If the plaintiff elects annulment, he is, of course, entitled to it on the basis of the jury's original verdict. *See supra* Part III(A) (supportable finding of serious deceit or duress, as to a material matter, justifies annulment of contractual obligation). As we have said earlier, annulment is, in this case, tantamount to specific performance of the Oral Contract. *See supra* note 9. Thus, annulment and resolution are mutually exclusive remedies. Depending on the proof, the plaintiff may or may not, as an alternative to annulment, satisfy the district court that he is entitled to an order for resolution of the Oral Contract. We, of course, intimate no view as to that question.

VI. CONCLUSION

We need go no further. We leave intact the jury's finding that Pritzker is liable to Dopp for procuring the SSA by deceit or duress and for breach of the Oral Contract. We reopen, however, the issue of the relief to which Dopp is entitled. It follows that the judgment in Dopp's favor is affirmed as to liability, but vacated in its relief-related aspects. The case is remanded for further proceedings consistent with this opinion.

The appeals taken by Dorado Rockwood Company are dismissed for want of jurisdiction. The order denying Island Resorts' Rule 59(e) motion is affirmed. Costs shall be taxed against Dorado Rockwood Company and Island Resorts, S.A. in their respective appeals. The parties to the remaining six appeals shall bear their own costs.

*So Ordered.*

UNITED STATES of America, Appellee,

v.

Michael MARAJ, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Sterling FUENTES, Defendant, Appellant.

Nos. 90–2202, 90–2203.

United States Court of Appeals, First Circuit.

Heard Sept. 10, 1991.

Decided Oct. 16, 1991.

Defendants were convicted in the United States District Court for the District of Puerto Rico, Jose Antonio Fuste, J., of aiding and abetting various violations of the drug trafficking laws. Defendants appealed. The Court of Appeals, Selya, Circuit Judge, held that: (1) the evidence was sufficient to support convictions for aiding and abetting the possession of cocaine, the possession of cocaine on board an aircraft, and the importation of cocaine from another country; (2) the defendants failed to show that they were prejudiced when their counsel was forced to empanel back-to-back juries in separate cases from a single jury pool; and (3) the district court's failure to inform counsel of the complete contents of a note from the jury requesting to see the sworn statement of a witness was harmless beyond a reasonable doubt.

Affirmed.

**1. Criminal Law ⇐552(1)**

Government may prove its case in whole or in part by circumstantial evidence.

**2. Drugs and Narcotics ⇐123(3), 124**

Evidence supported conviction for aiding and abetting violations of drug trafficking laws by possessing cocaine, by bringing or possessing cocaine on board aircraft arriving in the United States, and by importing cocaine; codefendant testified about transaction, there was undisputed evidence that tea cans in defendant's baggage actually contained cocaine and that contraband was not listed on aircraft's manifest, and codefendant's testimony was supported by circumstances. 18 U.S.C.A. § 2(a); Comprehensive Drug Abuse Prevention and Control Act of 1970, §§ 401(a)(1), 1002(a), 1005, 21 U.S.C.A. §§ 841(a)(1), 952(a), 955.

**3. Criminal Law ⇐1035(6)**

Defendant failed to preserve for appellate review his claim that he was denied fair trial when his counsel was compelled to empanel juries in separate criminal cases back-to-back from single jury pool where no transcript existed of chambers conference during which defense counsel allegedly objected to procedure and where there was no other sign of contemporaneous objection. U.S.C.A. Const.Amend. 6.

**4. Jury ⇐142**

Defendant failed to show that bias or prejudice resulted when his counsel was compelled to empanel back-to-back juries for separate cases from single jury pool; defendant did not raise timely objections to any individual juror, he did not show any prejudicial peculiarity during jury selection in either his case or the unrelated case, and defendant's case was tried first, so that nothing occurring during later trial could have interfered with defendant's right to fair trial. U.S.C.A. Const.Amend. 6.

**5. Criminal Law ⇐864**

Preferred practice for handling jury message should have jury's message reduced to writing, note marked as exhibit for identification, note shown or read fully to counsel, and counsel being given opportunity to suggest appropriate response; if note requires ore tenus response, jury should be recalled, note read into record or summarized by court, supplemental instructions given, and counsel afforded opportunity to object at sidebar, but if note is to be answered in writing, reply should be marked as exhibit for identification, judge should read both jury's note and reply into record, and counsel should be afforded opportunity to register objections before reply is transmitted to jury.

**6. Criminal Law ⇐864**

Message from jury that pertains to ongoing deliberations ought to be fully disclosed to counsel and counsel should be accorded opportunity to be heard before trial judge addresses jurors.

**7. Criminal Law ⇐1174(5)**

District court's failure to inform counsel of complete message received from jury during deliberations in which jurors requested to see sworn statement of witness was harmless error; failure to inform counsel about that portion of message indicating that "there is only one person who has a doubt as to this" did not indicate that there was division among jurors on question of guilt, but rather, that only one juror wished to review sworn statement of witness and it was uncontradicted that no such statement was in evidence or otherwise available to jurors.

---

Yolanda A. Collazo Rodriguez, Los Angeles, Cal., for appellant Maraj.

Thomas R. Lincoln, San Juan, P.R., for appellant Fuentes.

Jose A. Quiles, Asst. U.S. Atty., with whom Daniel F. Lopez–Romo, U.S. Atty., San Juan, P.R., was on brief for appellee.

Before SELYA, Circuit Judge, COFFIN and TIMBERS,* Senior Circuit Judges.

SELYA, Circuit Judge.

Upon their arrival in the United States from Trinidad and Tobago, appellants Michael Maraj and Sterling Fuentes were greeted with something less than unreserved cordiality. In rapid succession, the two men were arrested, indicted, tried, and convicted on three counts of aiding and abetting violations of the drug-trafficking laws.[1] Having reviewed the record below,

* Of the Second Circuit, sitting by designation.

1. The pertinent portions of the statutes of conviction read as follows:

[I]t shall be unlawful for any person knowingly or intentionally—

Case 1:07-cv-00968-SLDA Document 14-7 Filed 10/09/2007 Page 2 of 4



we find the evidence sufficient to convict; the trial judge's empanelment of two juries in succession to have been acceptable; and the judge's handling of a jury note, to the extent erroneous, to have been entirely harmless. Hence, we affirm the convictions.

## I.

### *Background*

Appellants' assignments of error do not require that we treat the facts of this case in exegetic fashion. Instead, we summarize the salient events in traditional post-conviction fashion, taking the evidence in the light most flattering to the prosecution. *See United States v. Jimenez-Perez*, 869 F.2d 9, 10 (1st Cir.1989); *United States v. Mejia-Lozano*, 829 F.2d 268, 270 (1st Cir. 1987).

On June 8, 1990, Maraj and Fuentes arrived in Puerto Rico on board American Airlines Flight 755. Routine inspection of Fuentes' suitcase and valise revealed three cans of what Fuentes said was tea. In fact, the cans contained 2,414 grams of a cocaine mixture (67% pure). The contraband was not manifested on the aircraft's official supply list. When the cat came free of the bag, Fuentes stated that he was carrying the cans at the behest of his traveling companion, Maraj. Maraj was then detained and interviewed. He denied knowing Fuentes. Nevertheless, the appellants' customs declarations showed the same Miami address as their proposed destination. Moreover, inside Fuentes' suitcase, customs agents found a strap belonging to Maraj and a key which fit Maraj's luggage.

At trial, Fuentes presented a graphologist, who testified that, in his opinion, the labels and baggage receipts for Fuentes' luggage were written by Maraj. Fuentes' mother testified that her son did not own any suitcases; that Maraj had been a visitor at her home in Trinidad and Tobago; that she had given permission for her son to accompany Maraj on business trips; that her son had done so on various occasions, using tickets bought by Maraj; and that Maraj paid her son to undertake the jaunt to Miami by way of San Juan. Fuentes himself corroborated much of this testimony. In addition, he denied knowing that he was carrying contraband.[2]

Maraj also testified. He said it was pure coincidence that he and Fuentes were aboard the same flight. He attempted to explain away the handwriting expert's testimony. He also stated that Fuentes admitted serving as a courier, transporting tea cans that he (Fuentes) thought in all probability contained drugs. Maraj denied owning the luggage that Fuentes was carrying and denied having told the authorities that he and Fuentes were strangers.

The jury convicted the defendants on all counts.

## II.

### *Sufficiency of the Evidence*

Appellant Maraj contends that the evidence was insufficient to support his conviction. Appellant Fuentes eschews a comparable challenge. Maraj's contention lacks merit.

[1] The standard of review for sufficiency challenges is whether the total evidence, taken in the light most amicable to the prosecution, together with all reasonable inferences favorable to it, would allow a rational factfinder to conclude beyond a reasonable doubt that the defendant was guilty as charged. *See, e.g., United States v. Victoria-Peguero*, 920 F.2d 77, 86–87 (1st Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 2053, 114 L.Ed.2d 458 (1991); *United States v. Luciano Pacheco*, 794 F.2d 7, 10 (1st Cir.1986). The government may prove its case in whole or in part by circumstantial evidence. *See, e.g., Victoria-Peguero*, 920 F.2d at 86; *Jimenez-Perez*, 869 F.2d at 10–11. Moreover, the proof "need not exclude every reasonable hypothesis of innocence, provided the record as a whole supports a conclusion of guilt beyond a reasonable doubt." *Victoria-Peguero*, 920 F.2d at 86–87.

[2] Application of these precepts makes short shrift of Maraj's sufficiency challenge. If the jury believed the relevant portions of Fuentes' testimony—and the jury, after all, is responsible for making credibility determinations and empowered to accept parts of a witness' testimony while rejecting other parts of the same testimony, *see United States v. Rothrock*, 806 F.2d 318, 321 (1st Cir.1986)—that testimony, in conjunction with undisputed facts (e.g., that the tea cans actually contained cocaine; that the contraband was not listed on the aircraft's manifest), was itself enough to warrant conviction. And Fuentes' testimony did not stand unbolstered: the circumstances were damning; the graphologist's evidence was strongly suggestive of Maraj's complicity; and Maraj's own credibility was suspect. On this record, the jury could certainly have disbelieved Maraj's self-serving account[3] and concluded, with the utmost rationality, that he was guilty of the offenses charged.

## III.

### *Back-to-Back Jury Empanelment*

Appellant Fuentes complains of unfairness because his counsel was compelled to empanel juries in two criminal cases back to back. Briefly stated, the facts are that on August 28, 1990, the district court summoned a jury pool and gave the pool members preliminary instructions as a group. Then, utilizing the single jury pool, Judge Fuste selected juries in two criminal cases. The first panel was chosen to serve in the instant case; the second panel was chosen to serve in a totally unrelated criminal case brought against one Eric Quesada-Bonilla.[4] The only discernible link between the two cases was that Fuentes and Quesada-Bonilla were represented by the same attorney. As matters turned out, two jurors became members of both panels. Additionally, three of the jurors previously selected to serve on the Maraj/Fuentes jury were dismissed as prospective jurors during the second empanelment. Fuentes asserts, without citation to any authority, that the double empanelment was so unfair as to taint his ensuing conviction. We reject his assertion on two grounds.

[3] In the first place, Fuentes' argument falls victim to procedural default. Although Fuentes' counsel claims that he objected to the dual empanelment during a chambers conference, and may have done so, no transcript of the conference exists (or, at least, none has been supplied). From aught that appears of record—and appellate courts must, of course, decide cases on the record—we can find no sign of any contemporaneous objection. It is crystal clear that "when a trial judge announces a proposed course of action which litigants believe to be erroneous, the parties detrimentally affected must act expeditiously to call the error to the judge's attention or to cure the defect...." *Reilly v. United States*, 863 F.2d 149, 160 (1st

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; ....
21 U.S.C. § 841(a)(1) (1982).
It shall be unlawful for any person to bring or possess on board any ... aircraft ... arriving in or departing from the United States ... a controlled substance ... unless such substance or drug is a part of the cargo entered in the manifest ... of the ... aircraft....
21 U.S.C. § 955 (1982).
It shall be unlawful to import into the customs territory of the United States from any place outside thereof ... any controlled substance ... or any narcotic drug [with exceptions not germane to this case].
21 U.S.C. § 952(a) (1982 & Supp. V 1987).
Whoever commits an offense against the United States or aids, abets, ... or procures its commission, is punishable as a principal.
18 U.S.C. § 2(a) (1988).

2. In rebuttal, the prosecution adduced proof that Fuentes told a customs agent, on the day of his arrest, that he knew the cans contained cocaine, but that the suitcases were not his property.

3. Of course, if the jury disbelieved Maraj, it could legitimately have presumed that his fabrication of an exonerative tale was, itself, some proof of Maraj's guilt. *See Jimenez-Perez*, 869 F.2d at 11; *United States v. Quejada-Zurique*, 708 F.2d 857, 861 (1st Cir.), *cert. denied*, 464 U.S. 855, 104 S.Ct. 173, 78 L.Ed.2d 156 (1983).

4. Quesada-Bonilla was charged with armed robbery of a federal post office. His case was tried subsequent to completion of the trial in the instant case.

Case 1:07-cv-00068-SLR-LPA Document 14-7 Filed 10/09/2007 Page 3 of 4



Cir.1988); *see also United States v. Natanel,* 938 F.2d 302, 310–12 (1st Cir.1991). Having failed to demonstrate that the assigned error was properly preserved, Fuentes' stance is severely undercut.

[4] Even if we accept, *arguendo,* Fuentes' undocumented version of what transpired, it would not profit his cause. Fuentes' counsel claims that he objected to the idea of back-to-back empanelment at the very outset. But, he acknowledges that he never raised timely objections to any individual juror on a basis related to the back-to-back empanelment. Moreover, he fails to pinpoint the occurrence of any prejudicial peculiarity during jury selection either in his case or in Quesada–Bonilla's case. Finally, Fuentes' case was tried before the Quesada–Bonilla case; thus, it is readily evident that nothing which transpired during the latter trial could have interfered with Fuentes' fair-trial rights. In sum, Fuentes has not fashioned—or even attempted to fashion—a specific showing of bias or prejudice. To the contrary, he invites us to promulgate a bright-line rule forbidding a trial judge to empanel criminal juries back to back if any defense attorney is to appear in more than one such case.[5] We have little hesitancy in declining Fuentes' blanket invitation.

While we have been unable to find any cases squarely on point, we think that, in the absence of some founded claim of prejudice on the part of a specific juror or jurors, the mere fact that defense counsel appears before the venire and chooses juries back to back while representing defendants in two different cases will not support a claim of generalized unfairness. *See United States v. Graham,* 739 F.2d 351, 352 (8th Cir.1984) ("In the absence of some showing of actual prejudice ... we have repeatedly rejected the argument that a juror's service in prior cases involving the same attorneys or witnesses supports a per se theory of implied bias.") (citing other Eighth Circuit cases); *United States v. Riebschlaeger,* 528 F.2d 1031, 1032–33 (5th Cir.) (per curiam) (the fact that many of the jurors served in other criminal cases which defense counsel had unsuccessfully defended did not taint venire), *cert. denied,* 429 U.S. 828, 97 S.Ct. 86, 50 L.Ed.2d 91 (1976); *United States v. Lena,* 497 F.Supp. 1352, 1363 (W.D.Pa.1980) (similar; same prosecuting attorney involved in both cases), *aff'd,* 649 F.2d 861 (3d Cir.1981); *see also United States v. Carranza,* 583 F.2d 25, 28 (1st Cir.1978) (absent a specific showing of bias or prejudice, "the fact that a juror sat in a prior case involving the same government witnesses and the same type of crime will not be grounds for disqualification *per se* unless the defendant is charged with an offense arising from the same transaction"); *Johnson v. United States,* 484 F.2d 309, 310 (8th Cir.) (per curiam) (similar), *cert. denied,* 414 U.S. 1039, 94 S.Ct. 539, 38 L.Ed.2d 329 (1973). Jurors, after all, do not expect that a lawyer will represent only one client in his or her lifetime.

In these days of crowded dockets and severe budgetary constraints, busy trial courts are under considerable pressure to develop more efficient methods of operation. One such method which has gained currency is multiple empanelment. Instead of selecting juries only on the eve of actual trial, federal district judges often select four or five juries at a crack, calling the jurors to serve as the cases are reached. Properly handled, the adverse effects of back-to-back empanelment are negligible. By the same token, the economies of the practice are significant. We encourage use of the method when feasible, much as we applaud other efforts at judicial economy so long as they can be implemented without diluting the parties' rights to a fair trial.

## IV.

### *The Jury Note*

The appellants' most troublesome claim of error relates to the trial judge's handling of a note received in the midst of the jury's deliberations. The note was written in Spanish. Translated, it reads as follows:

> Hon. Mr. Judge:
>
> We the jury would like to know if it is possible that we be provided with copy of the sworn statement of Maria Rabell, if it is possible.
>
> Thank you very much.
>
> There is only one person who has a doubt as to this.
>
> signed/[Forelady][6]

Following receipt of the note, the judge informed the lawyers of the jury's request (but did not show them the note itself). Without apprising counsel that the forelady wrote "[t]here is only one person who has a doubt as to this," the court had the jurors return to the courtroom and proceeded to tell them that no sworn statement could be provided. Without objection from counsel, the court said:

> If you are thinking in terms of a written sworn statement, there is no sworn statement in evidence. Therefore, I cannot give you th[e] sworn statement....
>
> Usually, usually, when cases are presented before the Grand Jury and agents testify or whomever testifies, the testimony is transcribed, and during the trial the attorneys for the defendants are entitled to have a copy of that testimony. It may be used, or it may not be used. In this case it was not used. It is not in evidence. Therefore, I cannot give it to you.
>
> If you were thinking, by sworn statement, the testimony she gave here in court, then it is not available.... [The court reporter] could read it to you, but I don't think you need that. Because it was ... brief testimony, very short. It was not complicated, and it was yesterday.... So you should try to recollect what the testimony was about....
>
> That is why we have twelve memories here to deal with the problem. Okay?

About half an hour later, the jury notified the judge that it had concluded its deliberations. Guilty verdicts followed.

The appellants insist that the court erred in not informing them of the entire contents of the note, and that the error was harmful because the court's ensuing statements to the jury were unduly coercive. We agree that the lower court erred—but the error was benign.

[5] The preferred practice for handling a jury message should include these steps: (1) the jury's communique should be reduced to writing; (2) the note should be marked as an exhibit for identification; (3) it should be shown, or read fully, to counsel; and (4) counsel should be given an opportunity to suggest an appropriate rejoinder.[7] If the note requires a response *ore tenus,* the jury should then be recalled, the note read into the record or summarized by the court, the supplemental instructions given, and counsel afforded an opportunity to object at sidebar. If, however, the note is to be answered in writing, the court's reply should be marked as an exhibit for identification, the judge should read both the jury's note and the reply into the record, and counsel should be afforded an opportunity to register objections before the reply is transmitted to the jury.

[6] Here, the protocol was slighted in an important respect. We regard it as settled beyond peradventure that messages from a deliberating jury, pertaining to ongoing deliberations, ought to be fully disclosed to counsel and that counsel should

5. Fuentes' argument, as expressed in his appellate brief, is long on pejoratives but short on substance. He brands the practice of back-to-back empanelment as "preposterous" because, "when an attorney appears before a group of laymen pleading the cause of his/her client, that feeling (or aura) that the attorney wants to communicate as to his/her client being someone special whose case is very important, to the client and to the attorney, is certainly diluted. The attorney, ridiculously standing before prospective and then selected jurors with two clients for whose causes he is there to plead, necessarily is made to appear as the hired gun. Moreover, the importance of each of the causes is diminished, thereby diminishing the presumption of innocence as to each defendant, regardless of the instructions the judge may later ... give." Brief of Appellant Fuentes at 29.

6. Maria Rabell was the customs inspector with whom Fuentes originally came in contact. She testified as a prosecution witness at trial.

7. We agree with the Second Circuit that, at this stage, "it is also helpful for the judge to inform counsel of the substance of [the] proposed response...." *United States v. Ronder,* 639 F.2d 931, 934 (2d Cir.1981). Additionally, the court should tell counsel whether its response will be in writing or from the bench.

Case 1:07-cv-00068-S-LDA Document 14-7 Filed 10/09/2007 Page 4 of 4



be accorded an opportunity to be heard before the trial judge addresses the jurors. *See Rogers v. United States,* 422 U.S. 35, 39, 95 S.Ct. 2091, 2094, 45 L.Ed.2d 1 (1975); *United States v. Ronder,* 639 F.2d 931, 934 (2d Cir.1981); *United States v. Robinson,* 560 F.2d 507, 516 (2d Cir.1977) (en banc), *cert. denied,* 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978); *see also United States v. Akitoye,* 923 F.2d 221, 226 (1st Cir.1991) (commending trial court's handling of jury note and commenting that court "was punctilious in consulting with counsel" at each juncture); *cf.* Fed.R.Crim.P. 43(a) (defendant's presence required at every stage of trial).

It makes little difference, we think, whether the trial court neglects to share a jury's note with counsel at all or, as in this case, informs counsel about the note, generally, but omits a portion of it. A lawyer's ability to respond to the exigencies of the moment in a meaningful way is equally hampered whether counsel is kept wholly in the dark or given part, but not all, of the relevant facts. It was, therefore, error for the judge not to have informed the lawyers about the last sentence in the jury's note.

[7] Our determination that the court below erred does not end our journey. It remains to be seen whether the mistake was harmful. The Seventh Circuit, in a thoughtful disquisition on the subject, recently ruled that a court's error in failing to disclose the contents of a jury's note to counsel, without more, is not an error of constitutional magnitude. *See United States v. Widgery,* 778 F.2d 325, 329–30 (7th Cir.1985); *see also Krische v. Smith,* 662 F.2d 177, 178–79 (2d Cir.1981). While we find it difficult to fault this reasoning, our own cases appear to have left open the question of what standard applies to harmless-error analysis in such a situation, *see, e.g., United States v. Flaherty,* 668 F.2d 566, 602 n. 27 (1st Cir.1981), and there is no need to take a definitive position here. Whether the harmlessness inquiry in this case is conducted under the strict standard required for many constitutional deprivations, *see, e.g., Chapman v. California,* 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–828, 17 L.Ed.2d 705 (1967); *United States v. Argentine,* 814 F.2d 783, 789 (1st Cir.1987), or under the less stringent standard applicable to the majority of trial errors, *see, e.g., Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946); *United States v. Ladd,* 885 F.2d 954, 957–58 (1st Cir.1989); *see also* Fed. R.Crim.P. 52(a), reversal is not obligatory.[8]

Fairly read, the omitted portion of the jury's note indicated not, as Fuentes' counsel contends, that the jury was divided on the question of guilt, but that one juror, and one juror alone, felt a need to review Rabell's sworn statement. It is uncontradicted that no such statement was in evidence or otherwise available to the jurors. Against this backdrop, the judge's comments were neither unduly coercive nor arguably unsatisfactory. Moreover, had the full note been contemporaneously disclosed, there was nothing more that defense counsel could appropriately have done to protect their clients' rights. On this record, we fail to see any realistic possibility that the partial nondisclosure prejudiced the defense, contributed even fractionally to the convictions, influenced the jury en route to the verdicts, swayed the trial's outcome, or adversely affected the appellants' substantial rights. In short, the error was harmless beyond any reasonable doubt.

8. In general, the stricter standard requires that, if there is "some reasonable possibility that error of constitutional dimension influenced the jury in reaching [its] verdict," then the conviction must be vacated. *Argentine,* 814 F.2d at 789. The more relaxed standard permits a conviction to stand, error notwithstanding, so long as it can be said "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Kotteakos,* 328 U.S. at 765, 66 S.Ct. at 1248.



## V.

### *Conclusion*

We need go no further.[9] "In the last analysis, [criminal defendants] are entitled to a fair trial, but not necessarily a perfect ... one." *United States v. Polito,* 856 F.2d 414, 418 (1st Cir.1988). So here. Despite the trial judge's solitary lapse, the appellants received a trial that was fundamentally fair in all respects.

*Affirmed.*

9. Fuentes also claims that the trial judge, in contravention of the applicable rule, "requested that counsel make objections to the jury instructions in the presence and within the hearing of the jury." Brief of Appellant Fuentes at 31. This statement misrepresents the record. After completing his instructions, and before the jury retired, the judge quite properly inquired whether either side wished to be heard. At that point, counsel had the requisite opportunity to go to sidebar and "make ... objection out of the hearing of the jury." Fed.R.Crim.P. 30. Or, if counsel preferred to register objections out of the jury's presence, he could have specifically requested the opportunity to do so. *See id.* Fuentes' counsel took neither route, instead indicating that he had no objections to the charge. We see no conceivable basis for a claim of error.

**Lillian J. Del Carmen FRANCO DE JEREZ, et al., Plaintiffs, Appellants,**

**v.**

**Filomeno BURGOS and the United States of America, Defendants, Appellees.**

**No. 91–1182.**

United States Court of Appeals, First Circuit.

Heard Sept. 4, 1991.

Decided Oct. 22, 1991.

Alien brought civil rights action against immigration inspector. The United States District Court for the District of Puerto Rico, Jaime Pieras, Jr., J., granted summary judgment for inspector, and alien appealed. The Court of Appeals, Breyer, Circuit Judge, 876 F.2d 1038, affirmed in part, vacated in part and remanded. On remand, alien's *Bivens* type claims against immigration inspector were consolidated with her claims against federal government under the Federal Tort Claims Act. The District Court entered judgment in favor of defendants, and alien appealed. The Court of Appeals, Bailey Aldrich, Senior Circuit Judge, held that, having been tried under pretrial stipulation restricted to constitutional claim, case could not be expanded on appeal to find Puerto Rico tort.

Affirmed.

**1. Federal Courts ⚷758, 775**

Having been tried under pretrial stipulation restricted to a constitutional claim, case could not be expanded on appeal to find Puerto Rico tort; any motion to amend to conform to proof should have been made to district court.

**2. Stipulations ⚷14(4)**

Whatever looseness may be overlooked in pleadings, stipulations must define issues, perhaps particularly in suits against government.

**3. Federal Courts ⚷614**

Case cannot be tried on one theory in district court and on another on appeal.

---

A. Santiago–Villalonga with whom Nachman & Fernandez–Sein, Santurce, P.R., were on brief, for appellants.

Isabel Munoz Acosta, Asst. U.S. Atty., with whom Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., were on brief, for appellees.

Before BREYER, Chief Judge, ALDRICH, Senior Circuit Judge, and CAMPBELL, Circuit Judge.